**LODGED**

JUL 1 1 2016

Clerk, U.S. District Court
District Of Montana
Great Falls

IN THE UNITED STATES DISTRICT COURT FOR
MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| BULL CHIEF, JR. MARVIN, AS GUARDIAN FOR STEVEN A. DOUGLAS JR., | CIV NO: |
| DUMONT, JR., NATHAN, (HANDICAPPED), | COMPLAINT; |
| | AND |
| AGOSTO, JOEY, | DEMAND FOR JURY TRIAL; |
| ALEXANDER, ORIN T., | |
| BAKER, SCOBEY, | |
| BIRDSBILL, SR., ROYCE, | |
| CLANCY, DELANO, | |
| COMESLAST, LINDA ON BEHALF OF ESTATE OF DECEASED, COMESLAST, ALFRED, | |
| COMESLAST, LINDA ON BEHALF OF ESTATE OF DECEASED, COMESLAST, CARRIE, | |
| CROWE, MARY, | |
| DEMARRIAS, REBA, | |
| HINES, TEDDY BARRY, | |
| UNKNOWN HEIRS, ESTATE OF DECEASED, HOPKINS, PEGGY, | |
| JACKSON, JAMES, | |
| LAVERDURE, JOHN, | |

LILLEY JR., MELVIN,

MCCALL, HARRIT,

MCCONNEL, ANONA P.,

MCCONNELL, HARRIS,

MEDICINE TOP-JACKSON, ANDREA R.,

MENZ, SR., DAVID W.

RED BOY, SR., DELAND,

RUNS THROUGH, ADAM,

RUNS THROUGH, DOUG,

SCHINDLER, COREY,

SCHINDLER, SANDY ON BEHALF OF ESTATE OF
DECEASED SCHINDLER, MYRNA,

SHAWL, CARRIE,

UNKNOWN HEIRS, ESTATE OF DECEASED SMALL,
KEVIN,

WESTON, SKYLA,

YELLOWHAWK, ERIC J.,

YELLOWHAWK, TERRANCE, ET. AL.,

all on their own behalf and on behalf of all
persons similarly situated,
                                    PLAINTIFFS,

v.

DSCHAAK, CHRIS Respondeat superior as Major,
City of Wolf Point, Montana,
RODENBERG, CRAIG; PAGE, JUDY; PAULSON,
ROLLIN; EVANS, LAURIE; BRAATEN, TRAVIS; BETS
HIS MEDICINE, TINA; BLOCK, DAVE; MORAN,
ASHLEY Respondeat superior as Counselpersons,

HARADA, JEFF Respondeat superior as Chief of
Police City of Wolf Point, Montana,

POLICEMEN, City of Wolf Point, Montana 1-2N,

SWAIN, SCOTT Dog Catcher City of Wolf Point,
Montana,

BEMER, HOWARD Respondeat superior as the
Department of Interior, Bureau of Indian Affairs,
Fort Peck Agent and Superintendent is the
commander of all reservation police on Fort
Peck Indian Reservation,

KING, ANGELA, as the Special Agent for the US,
Department of Interior, Bureau of Indian Affairs,
Office of Justice Services in charge of internal
investigation for the Wino Round Up,

AZURE, FLOYD Respondeat superior as Chairman
of the Fort Peck Assiniboine and Sioux Tribes
Tribal Executive Board and supervisor of all
tribal employees,

ANKETELL, STONEY former member of the Fort
Peck Assiniboine and Sioux Tribes Tribal
Executive Board,

WELCH, ROBERT former member of the Fort
Peck Assiniboine and Sioux Tribes Tribal
Executive Board and Chairman of the Fort Peck
Assiniboine and Sioux Tribe's Department of
Law and Justice,

TROTTIER, KENNETH Supervisory Criminal
Investigator of the Fort Peck Assiniboine and
Sioux Tribes Department of Law and Justice who
was duty bound to report pattern violations of
civil and criminal rights of tribal members,

HEADDRESS, MICHAEL Supervisor, former
Captain of the Fort Peck Assiniboine and Sioux
Tribes Department of Law and Justice,

BOYD, ELAINE Supervisor, former Director of the
Fort Peck Assiniboine and Sioux Tribes Adult
Correctional Facility,

WEINBERGER, ADRIENNE, former non lawyer
Tribal Prosecutor who had a legal duty to report
pattern violations of civil and criminal rights of
tribal members,

MARTELL, FRANK former Lieutenant and
currently a Criminal Investigator of the Fort Peck
Assiniboine and Sioux Tribes Department of Law
and Justice,

SUMMERS, JAMES, former Lieutenant and
currently Captain of the Fort Peck Assiniboine
and Sioux Tribes Department of Law and Justice,

COMBS, JAMES former Sergeant of the Fort Peck
Assiniboine and Sioux Tribes Department of Law
and Justice,

4

| FREDERICKS, JASON Sheriff Roosevelt County, Montana, PATCH, RALPH, Roosevelt County Attorney, and others as-yet unknown, DEFENDANTS. | |
|---|---|

**COMES NOW,** PLAINTIFFS filing pro se and American Indians brings this

action under 42 U.S.C. § 1983 to redress their civil and legal rights, and alleges as

follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the PLAINTIFFS seek relief for the

DEFENDANTS'' violations of their rights secured by the Civil Rights Act of 1964, 42

U.S.C. § 1983, by the United States Constitution, including its First, Fourth, Eighth

and Fourteenth Amendments, rights elaborated by the Indian Civil Rights Act of

1968, (25 U.S.C. § 1302), (ICRA), 42 U.S.C. § 2000(d)-7 and rights of American

Indians elaborated by federal statutes, rules, policies and decisional or enabling

laws and by the Declaration of Rights set forth in the Constitution of the State of

Montana.

2.      PLAINTIFFS seek compensatory and punitive damages for personal

injuries resulting from what is known to the PLAINTIFFS and DEFENDANTS' as the

Wino Round Up, a mass arrest of the PLAINTIFFS and additional persons now

estimated to be as many as 50 American Indians.

5

3.      The identity of the DEFENDANTS' stated is to the best of the

PLAINTIFFS' knowledge, abilities and understanding.

## PARTIES

4.      The PLAINTIFFS and those similarly situated were at all times relevant

to this controversy, residents of Fort Peck Indian Reservation, (Fort Peck).

5.      The DEFENDANTS' were at all times relevant to this controversy,

Residents within the exterior boundaries of Fort Peck in Roosevelt County,

Montana, and were acting in their official capacities serving their governing

bodies, and despite warnings and moral misgivings made personal decisions to

obey illegal orders. They participated in the conspiracy. They chose to not to

intervene and not to stop the violations of 1983.

6.      PLAINTIFFS by association MARVIN BULL CHIEF, JR., as guardian for

STEVEN A. DOUGLAS JR., AND NATHAN DUMONT, JR. are handicapped and

remaining PLAINTIFFS may or may not share the following traits in part or in full:

they are chronic drug and alcohol abusers, street people, homeless, variously

identified and vilified on a consistent basis by the DEFENDANTS City of Wolf Point,

elected, and appointed officials and police force, (CITY), and also by DEFENDANTS

Fort Peck Assiniboine and Sioux Tribes, (TRIBES) elected, and appointed officials

and police force as: Homeless, Winos, Street People, Tree People, Drug Addicts,

6

Alcoholics, or Prairie Niggers; and some of the vilified victims are to afraid of

retaliation and/or embarrassed to come before the Court for relief and damages.

7.      DEFENDANTS' by their association relevant and material to this

matter CHRIS DSCHAAK acting in his official and personal capacities as

Respondeat superior as Major, City of Wolf Point, Montana, (MAJOR); CRAIG

RODENBERG, JUDY PAGE, ROLLIN PAULSON, LAURIE EVANS, TRAVIS BRAATEN,

TINA BETS HIS MEDICINE, DAVE BLOCK, ASHLEY DAVE acting in their official and

personal capacities as Respondeat superior as Counselpersons of the CITY,

(COUNSEL); JEFF HARADA acting in his official and personal capacities as

Respondeat superior as Chief of Police of the CITY, (HARADA); POLICEMEN 1-2N

acting in their official and personal capacities as employees of the CITY, (POLICE);

SCOTT SWAIN acting in his former official and personal capacities as employee

and Dog Catcher for the CITY, (SWAIN); HOWARD BEMER acting in his official and

personal capacities as Respondeat superior as the United States, Department of

Interior, Bureau of Indian Affairs Fort Peck Agent and Superintendent and

commander of all reservation police on Fort Peck recognized under 18 U.S.C.

§1151[1], Title 3, Government Organization, Chapter 2. Police and Law Enforcement

---

[1] https://www.law.cornell.edu/uscode/text/18/1151

Sec. 201. Superintendent to command Reservation police[2] of the TRIBES

Comprehensive Code of Justice, and Montana Constitution, Article I, Compact

with the United States, Section I[3], (BEMER); ANGELA KING acting in her official

and personal capacities as the United States, Department of Interior, Bureau of

Indian Affairs, Office of Justice Services Special Agent in charge of the internal

investigation for the Wino Round Up; FLOYD AZURE acting in his official and

personal capacities as Respondeat superior as Chairman of the TRIBES Tribal

Executive Board and exercises general supervision of all other tribal officers and

employees and see that their respective duties are performed under the 2013

Appendix I of the TRIBES Constitution and Bylaws, Article XI, Bylaws, Section 6(e)

Duties of Officers. Duties of Chairman[4], (AZURE); STONEY ANKETELL formerly

acting in his official and personal capacities as member of the TRIBES Tribal

Executive Board, (ANKETELL); ROBERT WELCH formerly acting in his official and

personal capacities as Respondeat superior and member of the TRIBES Tribal

Executive Board and Chairman of the TRIBES Department of Law and Justice,

(L&J), (WELCH); KENNETH TROTTIER acting in his official and personal capacities

as Supervisory Criminal Investigator of the TRIBES L&J who had knowledge of the

---

[2] http://www.fptc.org/ccoj/title_3/sections/sec_201.pdf
[3] http://leg.mt.gov/bills/mca/CONSTITUTION/I/I.htm
[4] http://www.fptc.org/ccoj/appendix/appendix_1.pdf

Wino Round Up and was duty bound to report pattern violations of civil and criminal rights of the PLAINTIFFS and did not do so, (TROTTIER); MICHAEL HEADDRESS formerly acting in his official and personal capacities as Respondeat superior Captain of the TRIBES L&J, and currently an Associate Judge of the TRIBES Tribal Court, (HEADDRESS); ELAINE BOYD acting in her formal official and personal capacities as Respondeat superior as Director of the TRIBES, Adult Correctional Facility, (BOYD);  ADRIENNE WEINBERGER acting in her formal official and personal capacities as former Tribal Prosecutor non lawyer who had knowledge of the Wino Round Up and was duty bound to report pattern violations of civil and criminal rights of the PLAINTIFFS and did not do so, (WEINBERGER); FRANK MARTELL acting in his formal official and personal capacities as former Lieutenant and currently as Criminal Investigator of the TRIBES L&J, (MARTELL);  JAMES SUMMERS, acting in his formal official and personal capacities as former Lieutenant and currently Captain of the TRIBES L&J, (SUMMERS);  JAMES COMBS acting in his formal official and personal capacities as former Sergeant of the TRIBES L&J, (COMBS); JASON FREDERICKS acting in his official and personal capacities as Respondeat superior as Sheriff of Roosevelt County, Montana, who had knowledge of the Wino Round Up and was duty bound to report pattern violations of civil and criminal rights of the PLAINTIFFS

9

and did not do so, (FREDERICKS); RALPH PATCH acting in his official and personal

capacities as Roosevelt County Attorney who had knowledge of the Wino Round

Up and was duty bound to report pattern violations of civil and criminal rights of

the PLAINTIFFS and did not do so, (PATCH); and others as yet unknown.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and

the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the US

Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and

1343, and Indian Civil Rights Act of 1968, (25 U.S.C. § 1302), (ICRA).  In the US

Supreme Court decision *Neveda v. Hicks* 533 U.S. 353 (2001) Justice Scalia makes

it clear the resolution of this claim belongs in the Federal Courts establishing that

this court has jurisdiction to redress the 1983 claims of the American Indian

PLAINTIFFS.

9.      PLAINTIFFS' invoke the United States, Montana, and Tribal

Constitutions.

10.     PLAINTIFFS further invokes this Court's supplemental jurisdiction,

pursuant to 28 § 1367, over any and all Montana state law claims and as against

all parties that are so related to claims in this action within the original jurisdiction

of this Court that they form part of the same case or controversy.

11.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that DEFENDANTS CITY, and the Fort Peck are administratively located within the Great Falls District of Montana, and the events giving rise to this claim occurred within the boundaries of the Great Falls Division of the Montana US District Court.

## JURY TRIAL DEMAND

12.     PLAINTIFFS reserve the right to a jury trial pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

13.     At all times relevant to this action, PLAINTIFFS resided within the CITY in Roosevelt County, Montana and or near the same city, which is within the exterior boundaries of Fort Peck located in Northeast Montana.

14.     DEFENDANT CITY is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of Montana. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. DEFENDANTS assumes the risks incidental to the maintenance of a police force and the employment of police officers.

15.     The TRIBES was at all times relevant herein a tribal entity created an authorized under federal treaties and laws to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately

11

responsible. DEFENDANTS assumes the risks incidental to the maintenance of a tribal police force, the employment of police officers, tribal jail, the employment of tribal jailers and provisions of adequate medical, water, food and shelter for incarcerated persons, whether or not their incarcerations occurred according to the known processes and procedures of the TRIBES. DEFENDANTS is responsible for the conduct of its police and jail staff.

16.    The identities of the individual DEFENDANTS', that is the elected, appointed officials and employees in service of the CITY, TRIBES, and US who are known and identified and others not fully known to the PLAINTIFFS. In part, those individual officer's identities have been kept hidden by failure to create appropriate arrest, booking, and jail records, and in some occasions the officers of the DEFENDANTS CITY placed masking tape over their badge nameplates.

17.    DEFENDANTS Federal agent BEMER whose role was supervising and to command all law enforcement on Fort Peck and by the joint and several actions of the CITY, and TRIBES hiring police and jail staff, sharing the burden of coordination, transport, and incarceration of PLAINTIFFS each of the DEFENDANTS' have rendered themselves jointly and severally liable both in their official and personal capacities for the personal injuries occasioned by the inhumane conditions, dehydration, medical,  and emotional distress, exposure to

12

intense heat, and confinement with persons who were rendered unconscious and therefore incontinent. The DEFENDANTS' are jointly and severally responsible for crowded conditions which deprived male and female PLAINTIFFS of human dignity.

18.     By the conduct, acts and omissions complained of herein, the DEFENDANTS have negligently or intentionally violated clearly established constitutional standards set forth in the United States, Montana and Tribes constitutions. Substantially all of which personal injuries and affronts to human dignity were predicted, discussed and foreseen known or should have been stopped by the federal, city and tribal officers, elected or appointed officials, as well as the employees, police, transporters and jail staff who knew of and/or participated in the Wino Round Up and did cause the personal injuries complained of.

## NOTICE OF CLAIM

19.     The PLAINTIFFS have filed a notice of claim with BEMER, the CITY and TRIBES officials.

## STATEMENT OF FACTS

20.     PLAINTIFFS state they are all indigent and some are mentally and physically handicapped.

13

21.     PLAINTIFFS request the U.S. Attorney General to intervene on their behalf under the Civil Rights Act of 1964, Title II, Sec. 204, due to the disparity of adherence to the law.

22.     PLAINTIFFS request the Honorable Court to appoint an attorney licensed to practice before the Court for them as PLAINTIFFS certify the case is of general public importance, authorized by the Civil Rights Act of 1964, Title II, Sec. 204(a).

23.     PLAINTIFFS as indigent American Indians request the Honorable Court to waive any and all fees authorized by the Civil Rights Act of 1964, Title II, Sec. 204(a).

24.     PLAINTIFFS state they are victims due to the failure of all Law Enforcement Officers not providing them with due process and equal protection of the laws due to the fact their substantive rights were inhumanely violated.

25.     The events complained of are a continuous course of action conducted under the color of federal, tribal and state law and from PLAINTIFFS view are continuing.

## STATEMENT OF FACTS REGARDING THE WINO ROUND UP

26.     The CITY is surrounded by residential housing built and owned by the TRIBES.

14

27.     The CITY is host to North East Montana's oldest rodeo variously

known as parade, festivities and the Wild Horse Stampede and Professional

Rodeo Cowboy Association's Rodeo which is largely a white Anglo-Saxon event

conducted on Indian Lands within the exterior boundaries of Fort Peck, (PRCA).

28.     The DEFENDANTS contend with public drunkenness, drug abuse,

homeless persons pan handling, public defecation and urination by American

Indians when the DEFENDANTS allow for the sale of alcohol to these American

Indians within the exterior boundaries of Fort Peck which is directly related to the

racial classification and profiling of the American Indians as alcoholic's when the

sale and possession of any intoxicant is in direct violation of 18 U.S. Code § 1154,

Intoxicants dispensed in Indian country[5] and 18 U.S. Code § 1156, Intoxicants

possessed unlawfully.[6]

29.     In weeks or months prior to the July 12 and 13, 2013 PRCA, the

DEFENDANTS' by and through their officials and employees made provisions for

overtime service of police and jail staff, directed the officers to utilize both CITY

and TRIBES handcuffs, paddy wagons and police cars to sweep the streets of the

CITY and its immediate environs even though in the midst of and beyond the CITY

---

[5] 18 U.S. Code § 1154 - Intoxicants dispensed in Indian country
[6] https://www.law.cornell.edu/uscode/text/18/1156

limits located within the exterior boundaries of the Fort Peck are Assiniboine and Sioux property, also known as Indian Country defined under 18 U.S.C. § 1151.

30.     The DEFENDANTS'' sweep the streets of the CITY removed 30 to 50 individuals to curb the American Indian presence.

31.     The DEFENDANTS' sweep was so successful that they overwhelmed the CITY and TRIBES physical and human resources. The CITY and TRIBES were unable to provide adequate transportation and so packed the PLAINTIFFS into vehicles which were not adequately vented or cool and caused dehydration of all, prostration of some and loss of consciousness of at least one PLAINTIFFS.

32.     The Tribe's jail water and sewage system was disabled, and without medical staff and so the incarcerated PLAINTIFFS were kept without medical treatment, prescription medications prescribed by their physicians, water, or toilet facilities.

33.     The DEFENDANTS'' CITY and TRIBES policing officers on the street did not charge, book or make records of their activities and therefore did not identify many of the person's incarcerated and the identity of the DEFENDANTS CITY's arresting officers was likewise hidden.

34.     By virtue of the overwhelming of the DEFENDANTS entities' human and physical resources, PLAINTIFFS were confined in the jail's exterior basketball

courts, one for men and one for women. Women were provided a blanket and a pot in which to relieve themselves. Men were instructed to urinate through the fence. Some of the male PLAINTIFFS will testify that they were unable to get near the fence and so were forced to "pissed or shit their pants."

35.     The PLAINTIFFS hope to disclose that one or more of the five individuals incarcerated in the Wino Round Up have subsequently died and their deaths accelerated or caused by the physical stresses experienced during the incarcerations.

36.     The length of incarcerations varied from a few to more than 24 hours.

## CAUSE OF ACTION

### CLAIM I. BIVENS CLAIM

37.     PLAINTIFFS do not know the names of DEFENDANTS' that share liability therefore these PLAINTIFFS invoke:  the authority of **BIVENS V. SIX UNKNOWN FED. NARCOTIC AGENTS, 406 U.S. 388 (1971).**

### CLAIM II. Personal Injuries and Denial of Medical Care Occasioned by Cruel and Unusual Punishment

DEPRIVATION OF RIGHTS UNDER THE

FIRST, FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS AND

42 SC SEC. 1983

38.     PLAINTIFFS reallege and incorporates by reference all of the
allegations set forth in the preceding paragraphs as if fully set forth herein again.

39.     The conduct and actions of the DEFENDANTS entities and their
elected and appointed officials and employees occurred by acts in concert with
one another and under color of state, and tribal law.

40.     The DEFENDANTS entities and their elected and appointed officials
and employees authorized, directed and caused incarcerations without cause,
bookings, and criminal charges; confinement without water, toilet facilities, and
medical attention for the risks inherent in penning up the PLAINTIFFS and others
similarly situated in a cement floored and chain linked fenced basketball court
exposed to intense sun and thereafter a sudden and violent rainstorm. After the
DEFENDANTS' efforts to shield the incarcerated PLAINTIFFS by placing tarps over
the basketball courts failed, the men were placed in an even tighter confinement
within a windowless garage.

41.     The DEFENDANTS'' acts were cruel and unusual, unjustified and
unreasonable done by some negligently and by others intentionally and by some
willfully and maliciously gradations of deliberations constituting disregard for the
natural and probable consequences of their Wino Round Up without justification

18

and in violation of the rights of the PLAINTIFFS as set forth in United States,

Montana and Tribal Constitutions.

42.    As a result of the foregoing, the PLAINTIFFS suffered the personal

injuries and damages set forth herein above.

**CLAIM II. Municipal And Tribal Liability For Constitutional Violations**

MONEY CLAIM AGAINST THE CITY OF WOLF POINT AND FORT PECK TRIBES
42 USC SECTION 1983

43.    PLAINTIFFS realleges and incorporates by reference all of the

allegations set forth in the preceding paragraphs as if fully set forth herein again.

44.    The conduct and actions of the DEFENDANTS entities and their

elected and appointed officials and employees directly caused the constitutional

violations suffered by the PLAINTIFFS and are therefore liable for the personal

injuries occasioned thereby.

45.    The joint planning constitutes a conspiracy, a concert of action

undertaken pursuant to the joint agreement of the police forces and therefore

exposes not only the city to damage claims under the Civil Rights Act of the

United States, but also the tribe's officials and employees.

46.    Because of open meeting discussions and protests by some but not

all of the tribal police and its prosecutor not only the tribal council but it's senior

police and prosecution staff knew or should have known that hostility and indifference to the Native American's would cause personal injuries to all those incarcerated.

47.     The DEFENDANTS' knew or should have known of the racial classifying, hostility and propensities of employees of the CITY of WOLF POINT Police Department, that some of the officers addressed American Indians as "Prairie Niggers " and for that reason exacerbated the risk of injury or actual injuries of those they had incarcerated.

48.     As a result of the foregoing, the PLAINTIFFS suffered the injuries and damages set forth herein above.

49.     On July 12th and 13th of 2013 the named tribal member PLAINTIFFS and others similarly situated fitting the vilified descriptions set forth herein experienced being sequestered in a mass detainment, arrest and incarceration by the combined police forces of the CITY and TRIBES without due process of law, cause, warrant, notice, benefit of Miranda, right to counsel, right to a telephone call and were not booked, and no criminal charges were lodged against the PLAINTIFFS by a directive from the elected Tribal officials acting in their official and personal capacities AZURE, ANKETELL, and WELCH who had all final policy making authority for the tribal law enforcement functions and with the CITY

20

officials including  MAJOR, COUNSEL, and HARADA, made provisions for

dispatchers,  drivers equipment and certified law officers for overtime

authorization to detain and incarcerate PLAINTIFFS against their will in the tribal

jail in Poplar Montana to prevent them from allegedly pan-handling during the

PRCA hosted by the Wolf Point Chamber of Commerce in Montana; and as part of

the Tribal directive none of the tribal members were to be charged with any

criminal violations to avoid any judicial review and violated the rights of the

PLAINTIFFS as described herein.

50.     PLAINTIFFS were placed in inhumane conditions in the tribal jail

without working water or sewage or medical staff causing PLAINTIFFS personal

injuries and subjection to cruel and unusual punishments for the denial of medical

treatment, medications prescribed by personal physicians, dehydration, and toilet

facilities forcing them to urinate and/or defecate in the same location where they

were forced to stand, sit, or laydown to sleep until their release on July 13, 2013

when no other class or race was subjected to the same treatment in violation

their Fourth, Fifth, Eighth, and Fourteenth Amendment Rights.

51.     The personal injuries which are subject of this lawsuit, have a three-

year statute of limitation in the State of Montana and the injuries can fairly be

described as dehydration, medical, and emotional distress for the exposure to

heat, rain, and urine and feces occasioned by cattle-car transport of the

PLAINTIFFS from the CITY and surrounding areas of Wolf Point, Montana to the

tribal jail in Poplar, Montana.

52.     PLAINTIFFS will discover whether PRCA knew of what is known to the

PLAINTIFFS and DEFENDANTS' as the Wino Roundup.

53.     The known DEFENDANTS' actions were contrived outrageous

government conduct shocking to the conscience that no reasonable person would

believe was an act in good faith.  The DEFENDANTS' denied PLAINTIFFS their right

to attend a public social event, parade, festivities and PRCA.

54.     HEADDRESS acted on the direction of tribal executive board

members AZURE, ANKETELL, and WELCH.

55.     SUMMERS, MARTELL and COMBS acted on the direction of

HEADDRESS and violated the rights of the PLAINTIFFS as described herein.

## CLAIM III: FOURTEENTH AMENDMENT VIOLATIONS

56.     These claims are brought pursuant to Section 1983 and 1988 to

address abuse of authority under color of law.

57.     All of the acts alleged herein against the DEFENDANTS' and their

collaborators, or acting in conspiracy with them or at their behest or direction

were begun, to the best understanding of the PLAINTIFFS to remove the American

Indian's from pan handling the Wolf Point parade, festivities and PRCA on July 12, 2013 lasting until the next day July 13, 2013. See Attachment 1 (Affidavits of some of the victims.)

58.     Under the Fourteenth Amendments to the U.S. Constitution, and ICRA the policies and practices as applied to Enforcement of Arrest Procedures described in this complaint are unconstitutional because they lacked any probable cause, warrant, or criminal charge.

59.     The DEFENDANTS and co-conspirators have adopted practices and procedures which violate due process, threatened and injured these PLAINTIFFS and those similarly situated substantive rights and as a direct consequence subjected them to cruel and unusual punishments for the inhumane treatment.

60.     DEFENDANTS' pattern and practices investigated are documented by the US, Department of Interior, BIA KINGS's October 10, 2014 findings.

61.     The policy and practices of BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, MAJOR, COUNSEL, HARADA with final policy making constitutes an intentional choice to avail themselves of ambiguities in statute, and case law and obtain the advantage of qualified immunity for acts which violated and denied the PLAINTIFFS and those similarly situated substantive rights under the Fourteenth Amendment, and ICRA.

62.     The policies and practices of BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, MAJOR, COUNSEL, HARADA afforded their employees unbridled discretion and do not contain any procedural safeguards necessary to protect the PLAINTIFFS and public at large.

63.     The policies and practices of BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, MAJOR, COUNSEL, and HARADA have a substantial chilling effect on the Fourteenth Amendment and ICRA rights of the PLAINTIFFS and others not before the court.

64.     As a result, the DEFENDANTS' have caused the PLAINTIFFS and others similarly situated, irreparable personal injury, harm and damages for which there is no adequate remedy at law.

65.     As a legal consequence of the DEFENDANTS violation of the PLAINTIFFS' Fourth Amendment rights, the PLAINTIFFS are entitled to recover damages and compensation for the personal injuries, physical and severe emotional distress and anguish they suffered.

## CLAIM IV: DEFENDANTS'' ILLEGAL IMPRISONMENT OF PLAINTIFFS AND THOSE SIMILARLY SITUATED

66.     By and for this cause of action, the PLAINTIFFS hereby incorporate herein by reference all foregoing allegations.

24

67.     The DEFENDANTS'' incarceration of PLAINTIFFS and those similarly situated was without legal justification; lacking in probable cause, warrant, criminal charge intentionally designed to avail the DEFENDANTS of any wrong doing.

68.     After detaining the PLAINTIFFS and those similarly situated they were released the next day after being detained illegally.

69.     The circumstances of the illegal search, seizure and detention displays a practice and procedure of reckless or an intentional disposition to embarrass and inflict pain upon the PLAINTIFFS and those similarly situated all American Indians within the exterior boundaries of their reservation.

70.     By detaining and handcuffing the PLAINTIFFS and those similarly situated in so public a place, and thereafter causing them to be incarcerated without probable cause, Miranda, or booking, the DEFENDANTS displayed a reckless or an intentional disposition to embarrass and destroy the reputation of PLAINTIFFS and those similarly situated.

71.     The DEFENDANTS continued their reckless or intentional conduct, embarrassed and inflicted pain upon PLAINTIFFS and those similarly situated by subjecting them to inhumane, cruel and unusual punishments in conditions

without medical attention, water or a toilet forcing them to stand, sit, lay, urinate and/or defecate in the same area.

72. The tribal employees BOYD, TROTTIER, WEINGERGER failed to act to prevent the deprivations to the PLAINTIFFS and those similarly situated.

73. KING and BOYD falsified information to circumvent the severity of the incident by lowering the number of victims in their writings.

74. PLAINTIFFS and those similarly situated have suffered personal injury for the outrageous government conduct for loss of constitutional, civil and due process rights under ICRA due to the fact the TRIBES have not codified ICRA in its Comprehensive Code of Justice and therefore is routinely ignored by the TRIBES, its officials, employees, agents and representatives, the Tribal Court and the Tribal jail; the TRIBES have not consistently provided the PLAINTIFFS and others similarly situated with a full time licensed lawyer judge, public defender, and prosecutor only when obtaining the funding under the VAWA denying all American Indians their rights to licensed attorney's in the Tribal Court.

75. PLAINTIFFS and those similarly situated suffered the above losses because the DEFENDANTS' made a practice and policy of encouraging and/or directing staff to avoid independent judicial review.

76.    DEFENDANTS' and their staff acted negligently and intentionally to deprive PLAINTIFFS and those similarly situated and subject them to the personal injuries they have suffered.

77.    As a proximate result PLAINTIFFS and those similarly situated have suffered damages as well as severe emotional distress and anguish.

## CLAIM V: FOURTEENTH AMENDMENT VIOLATION

Section 1983 and 1988

78.    PLAINTIFFS hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

79.     As described DEFENDANTS conspired against PLAINTIFFS and those similarly situated in cooperation and caused them to be detained without cause.

80.    Although the DEFENDANTS' BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, MAJOR, and COUNSEL were not present at the time of PLAINTIFFS' arrests, detainment and incarceration they are still liable under this claim because they conspired and established the policy and practice of allowing the arrests, detainment and incarceration without cause of PLAINTIFFS and those similarly situated without observing the constitutionally required safeguards to avoid independent judicial review.

81.     DEFENDANTS' DEFENDANTS' BEMER, AZURE, ANKETELL, WELCH,

HEADDRESS, MAJOR, and COUNSEL recklessly or negligently failed to protect the

due process rights of PLAINTIFFS and others similarly situated persons by

establishing a practice and procedure which encouraged their employees to avoid

charging PLAINTIFFS and those similarly situated with any crime.

82.     By policy and practice, the DEFENDANTS' DEFENDANTS' BEMER,

AZURE, ANKETELL, WELCH, HEADDRESS, MAJOR, and COUNSEL, MAJOR, and

HARADA encouraged their employees to incarcerate PLAINTIFFS' and those

similarly situated without due process of law and criminal charge.

83.     DEFENDANT BEMER failed to protect PLAINTIFFS and those similarly

situated against DEFENDANTS' AZURE, ANKETELL, and WELCH'S directive for the

contrived incarceration of PLAINTIFFS and those similarly situated as a part of

their campaign against American Indian's and known targets of law enforcement

on a continuous basis.

84.     DEFENDANTS' AZURE, ANKETELL, WELCH, HEADDRESS, and HARADA

directed and executed the conspiracy to incarcerate PLAINTIFFS and those

similarly situated and to their deprivation, and HEADDRESS AND HARADA

participated in the actions against the PLAINTIFFS.

85.     As a result of these acts of misconduct, PLAINTIFFS and those similarly situated suffered personal injuries as set forth herebefore.

86.     As a proximate result PLAINTIFFS' and those similarly situated suffered financial damage as well as severe emotional distress and anguish.

87.     The DEFENDANTS' conspiracy and actions were willful and wonton, undertaken recklessly or intentionally with malice and indifference to the PLAINTIFFS and those similarly situated rights.

## CLAIM VI: FAILURE TO INTERVENE

Section 1983 and 1988

88.     PLAINTIFFS hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

89.     BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, TROTTIER, BOYD, WEINBERGER, MAJOR, COUNSEL, HARADA, FREDERICKS, and PATCH were aware of intent to falsify the detention and incarceration of the PLAINTIFFS and those similarly situated to get them off the streets of Wolf Point Montana allegedly so they couldn't pan handle during the Wolf Point parade, festivities, and PRCA.

90.     Likewise, other tribal, city and county elected officials and staff knew or should have known of the falsity of the arrests and incarceration against

PLAINTIFFS, knew or should have known of the constitutional violations would be caused by the policies and practices of DEFENDANTS.

91.     BEMER, AZURE, ANKETELL, WELCH, HEADDRESS, and HARADA encouraged their officers to detain and incarcerate PLAINTIFFS due process, cause, warrant, booking or criminal charge to avoid any independent judicial officers instead of assuring the PLAINTIFFS' and those similarly situated of due process and equal protection of the laws.

92.     As a result of the failures of those named herein and those whose identities will be discovered failed to intervene and prevent the violation of the PLAINTIFFS' and those similarly situated constitutional rights set forth both in the United States and Montana constitutions and ICRA. As a result of these defaults the PLAINTIFFS and those similarly situated suffered the injuries described herebefore.

93.     As a proximate result the PLAINTIFFS and those similarly situated suffered personal injury damages as well as severe emotional distress and anguish.

94.     The misconduct described in this claim was objectively unreasonable and the consequences known to flow therefrom occurred by reason of the reckless or intentional indifference to the PLAINTIFFS constitutional rights.

## CLAIM VII.  Deprivation of Free Speech, Freedom of Expression, Freedom of Travel under United States, Montana and Tribal Constitutions

95.     PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

96.     The conduct and actions of the DEFENDANTS entities and their elected and appointed officials and employees directly caused deprivation of an opportunity to protest, freedom of speech, freedom of expression, and freedom to enjoy or protest the PRCA.

97.     The conduct of the DEFENDANTS' interfered with the PLAINTIFFS 'freedom of speech, assembly and association.

98.     As a result of the foregoing, the PLAINTIFFS suffered the deprivations of freedoms as set forth herein above.

## COMMON LAW CLAIMS

## CLAIM VIII: Assault and Battery

99.     PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

100.    The conduct and actions of the DEFENDANTS entities and their elected and appointed officials and employees directly caused the torts of assault and battery upon the PLAINTIFFS.

31

101.   As a result of the foregoing, the PLAINTIFFS suffered personal injuries and damages set forth herein above.

## CLAIM IX: Intentional infliction of Emotional Distress

102.   PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

103.   The conduct and actions of the DEFENDANTS entities and their elected and appointed officials and employees directly caused the intentional inflictions of emotional distress upon the PLAINTIFFS.

104.   As a result of the foregoing, the PLAINTIFFS suffered the personal injuries and damages set forth herein above.

## CLAIM X: Respondeat Superior Liability of Defendants Et. Al.

105.   PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

106.   The conduct and actions of the DEFENDANTS elected and appointed officials caused its employees to perform the illegal acts while on duty and serving as agents and servants.

107.   The DEFENDANTS are therefore liable pursuant to the doctrine of Respondeat Superior.

## CLAIM XI: City of Wolf Point's Negligent Supervision, Retention and Training

108.   PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

109.   DEFENDANTS CITY did not train, or supervise its police officers and so the hate speech and acts of individual officers were direct and proximate causes of the PLAINTIFFS' injuries and constitutional deprivations.

110.   As a result of the foregoing, the PLAINTIFFS suffered the injuries and damages set forth herein above.

**Claim XII: Ft. Peck Assiniboine Sioux Tribes Negligent Supervision, Retention and Training**

111.   PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

112.   DEFENDANTS Tribes did not train, or supervise its police officers and so the hate speech and acts of individual officers were direct and proximate causes of the PLAINTIFFS' injuries and constitutional deprivations.

113.   As a result of the foregoing, the PLAINTIFFS suffered the injuries and damages set forth herein above.

**CLAIM XIII:  Negligent Infliction of Emotional Distress**

114.   PLAINTIFFS realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein again.

115.   The conduct and actions of the DEFENDANTS entities and their elected and appointed officials and employees directly caused the negligent inflictions of emotional distress upon the PLAINTIFFS.

116.   As a result of the foregoing, the PLAINTIFFS suffered the injuries and damages set forth herein above.

117.   The PLAINTIFFS Tribal Members suffered personal injury as a result of being detained in the Fort Peck Tribal Jail in an outdoor yard surrounded by a chain link fence and subjected to unsanitary, inhumane conditions, denied medical attention, water, and toilet facilities causing the diabetic PLAINTIFFS to be denied medical attention, and medications.  PLAINTIFFS' 8th Amendment Rights to be incarcerated without sufferance of cruel and unusual punishment were violated by the effectuation of the Wino Roundup which required they stand, sit and lie down in urine and feces. Violation of PLAINTIFFS' Eight Amendment Rights entitle them to claim exemplary damages for cruel and unusual punishment, outrageous government conduct was shocking to the conscience under the *color of law.*

118.   The PLAINTIFFS and those similarly situated were recreating, waiting, walking around in Wolf Point, Montana expecting to attend the PRCA.

119.   Federal employee, KING, prepared a Report of Investigation entitled,
***Fort Peck Department of Law and Justice, Case No.: KOL120-13-265***, identified as
the ***Offense: Civil Rights Violation***. She found multiple violations after
interviewing 35 of the approximately 50. Although she found in favor of the
Winos in effect she did nothing to remedy the abuses.  Although she knew of the
CITY police involvement in false arrests, her report did not reference the CITY's
involvement in the effectuation of the conspiracy.

120.   PLAINTIFFS and others similarly situated persons' sufferance of
incarceration and subjection to inhumane treatment and cruel and usual
punishments occurred via the joint and several acts of the Wolf Point Police who
captured Winos in Wolf Point and delivered prisoners directly to Tribal Police
Chief Headdress and his staff.

121.   BEMER violated the rights of the PLAINTIFFS as described herein
while acting in his official capacity and despite warnings and moral misgivings
made a personal decision to not to intervene and not to stop the violations of the
PLAINTIFFS US, American Indian, and Montana civil rights.

122.   MAYOR, COUNSEL, AND HARADA violated the rights of the
PLAINTIFFS as described herein while acting in their official capacities and despite
warnings and moral misgivings made a personal decision to not to intervene and

not to stop the violations of the PLAINTIFFS US, American Indian, and Montana civil rights.

123. Unknown officers acted on the direction of HARADA and violated the rights of the PLAINTIFFS as described hereinafter.

124. Unknown persons, including federal employees are believed to have aided, abetted, or countenanced and so covered up the involvement of the CITY and perhaps the PRCA's involvement in conspiracy and Wino Roundup.

125. All of the individual DEFENDANTS' acts and omissions described in this complaint constituted *US, Tribal and State Actions* committed under color of law within the scope of their employments.

**CLAIM XIV: LIABILITY CITY OF WOLF POINT** Sections 1983 and 1988

126. PLAINTIFFS hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

127. MAJOR, COUNSEL, and HARADA had an arrogant view of themselves under the provisions of the Montana Constitution.

128. In *Walker v. State of Montana*, No. 01-528 (2003)[7] the Supreme Court of Montana Held in relevant part: "When the people of Montana ratified a new State Constitution in 1972, they recognized that all human beings have an

---

[7] http://caselaw.findlaw.com/mt-supreme-court/1261052.html

innate dignity: Individual dignity.   The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas. Art. II, Sec. 4, Mont. Const. (emphasis added)."

129.   Every person elected or appointed to any office of trust or profit under any Constitution of the US, State or TRIBES must give personal attention to the legal duties of the office to which he is appointed.

130.   The DEFENDANTS CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA knew or should have known of conspiracy against the PLAINTIFFS.

131.   The DEFENDANTS CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA knew or should have known of the policies and practices of DEFENDANTS' which encouraged the officers to incarcerate PLAINTIFFS and other similarly situated persons and all Native American's was without probable cause, warrant or charges by passed an independent judicial officer.

132.   The DEFENDANTS CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA knew or should have known that the DEFENDANTS' incarceration of the PLAINTIFFS and other similarly situated persons and all Native American's was unconstitutional and subjected them to racial classifying, profiling and personal injury for the inhumane treatment, conditions and cruel and unusual punishments.

133.   The DEFENDANTS CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA knew or should have known that the PLAINTIFFS and other similarly situated persons were innocent persons to advance their government to government relationships in conspiracy against the PLAINTIFFS and other similarly situated persons as American Indians.

134.   The DEFENDANTS CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA knew or should have known that the PLAINTIFFS and other similarly situated persons as American Indians in the terms of the Montana Constitution were subjected to the intimidated exercise of law enforcement in denial of their substantive and human rights who feared law enforcement authority as socially and economically disadvantaged American Indians.

135.   The PLAINTIFFS and other similarly situated persons as American Indians have suffered continuous harassment, intimidation, arrest and incarceration by the State of Montana and its political subdivisions; a known practice and public threat on Fort Peck.

136.   The DEFENDANTS' CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA breaches of their legal duty to intervene caused or contributed to the constitutional violations to which PLAINTIFFS and other similarly situated persons experienced.

137.   The DEFENDANTS' CITY and its appointed and elected officials including but not limited to MAJOR, COUNSEL, and HARADA failed to intervene and as a direct result PLAINTIFFS and others similarly situated American Indians suffered racial classifying, profiling and the personal injuries described herebefore.

138.   As a proximate result PLAINTIFFS and others similarly situated persons suffered racial classifying, profiling and personal injuries as well as severe emotional distress and anguish.

139.   The misconduct of the DEFENDANTS' described in this claim was objectively unreasonable and occurred either by intention or by willful indifference to the PLAINTIFFS and those similarly situated constitutional rights.

39

**CLAIM XV: CONSPIRACY** Section 1983 and 1988

140.    PLAINTIFFS hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

141.    As described more fully above, DEFENDANTS', acting in concert with other unknown co-conspirators have conspired by concerted action to accomplish unlawful purposes by unlawful means.

142.    In furtherance of the conspiracy, each of the co-conspirators has committed overt acts and otherwise willfully participated in joint activity.

143.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of PLAINTIFFS and others.

144.    As a proximate result of the conspiracy PLAINTIFFS and other similarly situated persons suffered racial classifying, profiling and personal injury as well as severe emotional distress and anguish.

## CONCLUSION

145.    KING does authenticate the civil rights violations alleged against the DEFENDANTS entitling PLAINTIFFS to relief for the personal injuries and damages.

146.    PLAINTIFFS pray upon the Honorable Court to grant PLAINTIFFS request for legal counsel and waiver of filing fees authorized by the Civil Rights Act of 1964, Title II, Sec. 204(a).

**WHEREFORE**, PLAINTIFFS demand the following relief jointly and severally against all of the DEFENDANTS:

A. Compensatory damages in the amount to be determined by a jury;

B. Punitive damages in an amount to be determined by a jury;

C. The convening and empaneling of a jury to consider the merits of the claims herein;

D. Interest on awards, reasonable hourly fees for investigators and paralegals and such other costs as are allowed;

E. An order prohibiting retaliation against these PLAINTIFFS and similarly situated persons;

F. For a court ordered unbiased monitor of BEMER, KING, CITY, and TRIBES policing and justice procedure, processes, and systems.

Respectfully submitted this 12th day of July, 2016.

VERIFICATION

I, Reba Demarrias, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*Reba Demarrias*

Reba Demarrias

VERIFICATION

I, Scobey Baker, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*unavailable in prison*

Scobey Baker

VERIFICATION

I, Kevin Small, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*Deceased unable to locate heirs*

Kevin Small

VERIFICATION

I, Myrna Schindler, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*Sandra St. Germaine for deceased Myrna Schindler Finley*

Myrna Schindler

VERIFICATION

I, Doug Runs Through, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*May be Deceased*

Doug Runs Through

VERIFICATION

I, Nathan Dumont, Jr., hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

X _Nathan Dumont Jr._

Nathan Dumont, Jr.

VERIFICATION

I, Harrit McCall, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

X _____

Harrit McCall _n e ll_
_P.O. Box 1165 WP._

VERIFICATION

I, Deland Red Boy, Sr., hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

X _Deland Red Boy, Sr._  _7-10-16_

Deland Red Boy, Sr. _501 5th Custer Apt 4_
_W. P., Mt._

VERIFICATION

I, Royce Birdsbill, Sr., hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Royce Birdsbill, Sr.

_PG Box 479_
_Wolf Point MT 59201_

VERIFICATION

I, Linda Comeslast on behalf of the estate of deceased Alfred Comeslast, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Linda Comeslast

P.O. Box 114
W.P. Klt. 59201   406 650-1931

VERIFICATION

I, Linda Comeslast on behalf of the estate of deceased Carrie Comeslast, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Linda Comeslast

P.O. Box 114
W.P., Mt 59201   406-650-1931

VERIFICATION

I, Teddy Barry Hines, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

X _____
Teddy Barry Hines

104 E. Front St. #2
wolf point, mt 59201
7/10-16

VERIFICATION

I, Estate of Deceased Peggy Hopkins, Unknown Heirs, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

UNABLE TO VERIFY HEIRS

**VERIFICATION**

I, David W. Menz, Sr., hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

*P.O. BOX: 554*
*WOLF POINT, MT*
*59201*

David W. Menz, Sr.

**VERIFICATION**

I, Adam Runs Through, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Adam Runs Through

**VERIFICATION**

I, Corey Schindler, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Corey Schindler

**VERIFICATION**

I, Skyla Weston, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Skyla Weston

**VERIFICATION**

I, James Jackson, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

James Jackson

**VERIFICATION**

I, John Laverdure, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

John Lavendure

**VERIFICATION**

I, Marvin Bull Chief, Jr. Guardian for and on behalf of Steven A. Douglas Jr. a person with known disabilities, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Marvin Bull Chief, Jr. for Steven A. Douglas

Marvin Bull Chief, Jr.   P.O. Box 1073   768-8611
Poplar, MT

**VERIFICATION**

I, Melvin Lilley, Jr., hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Melvin Lilley, Jr.

VERIFICATION

I, Joey Agosto, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Joey Agosto

VERIFICATION

I, Mary Crowe, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Mary Crowe

VERIFICATION

I, Carrie Shawl, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Carrie Shawl

VERIFICATION

I, Andrea R. Medicine Top-Jackson, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Andrea R. Medicine Top-Jackson

**VERIFICATION**

I, Orin T. Alexander, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Orin T. Alexander
**VERIFICATION**

I, Eric J. Yellowhawk, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Eric J. Yellowhawk

**VERIFICATION**

I, Terrance Yellowhawk, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Terrance Yellowhawk

**VERIFICATION**

I, Delano Clancy, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Delano Clancy
**VERIFICATION**

I, Anona P. McConnel, hereby affirm that I have read this complaint and verify to the best of my knowledge that the factual allegations contained are true and correct and that upon the discovery that they are incorrect or deficient, I will amend and correct this pleading.

Anona P. McConnel